966 F.2d 1441
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Miguel CHAVEZ-ROBLES, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 91-2511.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: March 5, 1992
Decided: June 10, 1992
 
 Laurence F. Johnson, Ronald D. Richey, Johnson & Freedman, P.C., Wheaton, Maryland, for Petitioner.
 Stuart M. Gerson, Assistant Attorney General, Mark C. Walters, Alison R. Drucker, United States Department of Justice, Washington, D.C., for Respondent.
 Before PHILLIPS, WILKINS, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Miguel Chavez-Robles appeals the final order of the Board of Immigration Appeals (Board) denying his application for withholding of deportation, under 8 U.S.C.A. § 1253(h) (West Supp. 1991), and asylum under 8 U.S.C.A. § 1158(a), and 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1991). We affirm.
 
 
 2
 * Chavez is a twenty-four year-old native and citizen of Nicaragua. He entered the United States on January 4, 1985, without inspection, in violation of 8 U.S.C. § 1251(a)(1)(B) (West Supp. 1991), and was ordered to show cause why he should not be deported. At a hearing before an immigration judge, Chavez admitted the allegations in the show cause order and conceded his deportability. He filed an application for withholding of deportation and asylum based on his fear of persecution in his native country. Specifically, Chavez claimed that he and his family had been threatened in Nicaragua because of political opinion and membership in a particular social group, "young male." He stated that he refused to advocate the Marxist philosophy of the Sandinista government and was therefore the subject of verbal and written threats. On cross-examination, Chavez admitted that he was never a member of any anti-Sandinista organization.
 
 
 3
 Chavez also stated that, if ordered to return to Nicaragua, he would be required to join the Sandinista army because he is now over eighteen years old. He claimed that he had previously been asked to join the Sandanista army but had refused, and will now be persecuted for his past refusals upon his return. He further claimed that two of his cousins were assassinated for refusing to do as ordered by the Sandinistas. Chavez admitted to never having been imprisoned or personally harmed when he was in his native country.
 
 
 4
 The application for asylum and withholding of deportation was submitted for an advisory opinion to the State Department's Bureau of Human Rights and Humanitarian Affairs (BHRHA), pursuant to 8 C.F.R. § 208.4(a) (1991). The BHRHA found that after "careful review of the information submitted," petitioner"failed to establish a well-founded fear of persecution upon return to Nicaragua."
 
 
 5
 Chavez argued at the hearing that his fear of persecution is based on threats he and his family received in Nicaragua in retaliation for their refusal to support the Sandinistas during their revolution against the Samoza government in Nicaragua, and for his refusal to join the Sandinista army or to subscribe to its political views. In support of his application, Chavez offered his personal testimony as well as that of his aunt, Amanda Diaz. He also submitted documentary evidence.
 
 II
 
 6
 To be eligible for asylum under 8 U.S.C.A. § 1158(a), an applicant must show that he is a "refugee" within the meaning of 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1991). A "refugee" is an alien who is unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A). Once it is established that an alien is a refugee under the statute, the Attorney General may grant asylum, in his discretion. See Tarvand v. United States INS, 937 F.2d 973, 976 (4th Cir. 1991); Figeroa v. United States INS, 886 F.2d 76, 79 (4th Cir. 1989).
 
 
 7
 The statute does not define "well-founded fear of persecution." The objective component of the requirement is based on a"reasonable person" approach. To establish a well-founded fear, the alien must set forth specific facts under which a reasonable person would fear persecution. M.A. A26851062 v. United States INS, 899 F.2d 304, 311 (4th Cir. 1990) (en banc). Such facts may be in the form of documentary evidence demonstrating past abuse or threats of future persecution. Where such documentary evidence is unavailable, testimony of the applicant will support an application for asylum if it is "credible, persuasive, and refers to 'specific facts that give rise to an inference that the applicant has been or has a good reason to fear that he or she will be singled out for persecution.' " Figeroa, 886 F.2d at 79; Cardoza- Fonseca v. United States INS, 767 F.2d 1448, 1453 (9th Cir. 1985), aff'd, 480 U.S. 421 (1987).*
 
 
 8
 The immigration judge found that Chavez failed to meet his burden of proving he had a reasonable fear of persecution. In reaching this conclusion, the immigration judge discredited the aunt's testimony. In addition, the judge found that Chavez had not proven that he had personally been the subject of threats and that his refusal to join the military did not constitute sufficient grounds for granting asylum.
 
 
 9
 The Board, after an independent review, affirmed on other grounds. It took administrative notice of the change of governments in Nicaragua and the fall of the Sandinistas. Effective April 25, 1990, a new coalition government was formed by parties opposed to the Sandinistas and Violeta Chamorro was inaugurated as the new president. She announced an end to military conscription and an end to the hostilities between the former Contra resistance and the Nicaraguan government. Because the Sandinista party no longer governs Nicaragua, the Board held that there was no support for Chavez's claim of a wellfounded fear of persecution by the Sandinista authorities in the event he is returned to that country. Chavez argues that the Sandinistas continue to possess control over the military in Nicaragua, and therefore, his fear of persecution continues to be reasonably based on the reality of the political situation in Nicaragua.
 
 
 10
 The Fifth Circuit recently considered the effect of the Board's taking official notice of a change in government. In Rivera-Cruz v. INS, 948 F.2d 962 (5th Cir. 1991), the Board had taken administrative notice of the Sandinistas' loss of power and Chamorro's ascendance. The court reviewed the taking of official notice and determined that it was not an abuse of discretion. Id. at 967. The court also held that Rivera's attempt to argue the officially noticed facts for the first time on appeal was improper, and that the proper forum for submitting evidence that Chamorro's government is crumbling is in a motion to reopen filed with the Board.
 
 
 11
 Because we are constrained only to consider the evidence previously brought before the Board, see Tejeda-Mata v. INS, 626 F.2d 721, 726 (9th Cir. 1980), cert. denied, 456 U.S. 994 (1982), we may not now consider Chavez's arguments concerning the present situation in Nicaragua raised for the first time in this appeal. We therefore uphold the Board's denial of asylum based on the facts as noticed. In so doing, we note that our decision today is without prejudice to Chavez filing a motion to reopen with the Board any time prior to his being ordered to depart the United States, pursuant to 8 C.F.R. § 3.2 (1991). See Rivera-Cruz v. INS, 948 F.2d at 968; Figeroa v. INS, 886 F.2d at 77 n.1. Once the Board has considered any new evidence Chavez submits in support of his claim, Chavez may once again seek judicial review in this Court.
 
 III
 
 12
 Chavez also argues that he is independently entitled to relief under the Board's reasoning in Matter of Chen, I. & N. Dec. 3104 (BIA 1989). In that case, the Board held that asylum may be granted if past persecution was so severe that repatriation would be inhumane, even if there is no reasonable likelihood of present or future persecution. In Chen, the petitioner was systematically tortured for eight years during China's Cultural Revolution on account of his religious beliefs.
 
 
 13
 It was not an abuse of discretion for the Board to deny asylum based on Chavez's past persecution. There was substantial evidence for the Board to conclude that, even if Chavez was subject to threats while in Nicaragua, the Sandinistas' actions against him do not provide a compelling basis warranting discretionary relief.
 
 IV
 
 14
 Because Chavez has failed to meet the less stringent burden of proof required for asylum, we need not decide whether he is eligible for withholding of deportation under 8 U.S.C.A.s 1253(h). See Rivera-Cruz v. INS, 948 F.2d at 969.
 
 
 15
 For the reasons expressed, we affirm the order of the Board. We dispense with oral argument because the facts and legal contentions have recently been authoritatively decided and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 The immigration judge required Chavez to demonstrate a "clear probability" of persecution, the standard applicable to applications for withholding of deportation. While the case was pending before the Board, the Supreme Court held that the two statutes contemplate two different standards, and that a less stringent showing is required for eligibility for asylum. INS v. Cardoza-Fonseca, 480 U.S. 421 (1987). However, Chavez is not prejudiced because the Board reviewed his case de novo, applying the correct standards. See Rodriguez-Rivera v. United States INS, 848 F.2d 998, 1002 (9th Cir. 1988)